PRYOR CASHMAN, LLP
Brad D. Rose (brose@pryorcashman.com)
Benjamin K. Semel (bsemel@pryorcashman.com)
7 Times Square
New York, New York 10036
Telephone: (212) 421-4100
*Attorneys for Plaintiff*

CV 12 - 4784

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

PARKER WAICHMAN LLP

*Plaintiff,*

-against-

GILMAN LAW LLP and ROBERT LARAIA

*Defendants.*

__ CIV. _____ (__)

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Parker Waichman LLP ("PW"), by and through its attorneys Pryor Cashman LLP, alleges against Defendants Gilman Law LLP ("Gilman") and Robert Laraia ("Laraia") as follows:

INTRODUCTION

1. This action involves claims of the willful, unauthorized and unlawful copying by Defendant Gilman of the form and content of PW's website, with the intent to confuse consumers and divert business from PW to Gilman. On information and belief, Gilman unlawfully procured the breach of an employment contract, common law duties and non-disclosure obligations of PW's employee Laraia, further misappropriating confidential data, including those pertaining to the design, use, methods, systems, contacts, knowledge and access of PW's website.

## PARTIES

2. PW is a New York limited liability partnership in the business of providing legal services, with a principal place of business at 6 Harbor Park Drive, Port Washington, NY 11050.

3. On information and belief, Gilman is a Florida limited liability partnership in the business of providing legal services that Gilman advertises, operates nationwide, markets its services on the Internet, and has principal offices at 3301 Bonita Beach Road, Bonita Springs, FL 34134 and 125 Summer Street, Boston, MA 02110.

4. On information and belief, Laraia is an individual residing at 107 Barretts Avenue, Holtsville, New York 11742, and has been an employee of PW since July 2, 2007, with the responsibility to undertake various duties and functions concerning the web marketing of PW culminating his is self-given title of Director of Lead Generation/Internet Media.

## JURISDICTION AND VENUE

5. This action arises under the Trademark Laws of the United States, as hereinafter more fully appears. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1338 (a) (action arising under an Act of Congress relating to trademark) and 28 U.S.C. § 1331 (federal question). This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6. On information and belief, this Court has general and specific personal jurisdiction over Gilman in that Gilman does business in this judicial district, derives substantial revenue from this judicial district by engaging in an extensive, systematic and continuous course of conduct within this judicial district, in engaging in numerous acts in the district with defendant Laraia including in-person meetings, utilization of the mails, telephones and electronic media and because the subject claims arise from acts within this judicial district resulting in injury and

damages to Plaintiff within this judicial district.

7. On information and belief, this Court has general and specific personal jurisdiction over Laraia in that he resides in this judicial district.

8. Venue is proper in this District pursuant to 28 U.S.C. §§1391(b), and 1400(a) in that the subject infringement involves the infringement of trade dress owned by Plaintiff, which lies within the Eastern District of New York.

## GENERAL ALLEGATIONS

### Plaintiff's Website

9. Plaintiff arranged for the design, coding, production, and maintenance of a website to market its services over the Internet, accessed via the domain name YOURLAWYER.COM (hereinafter "the PW Website"). PW owns the exclusive right, title, and interest in the webpages and source code published on the PW Website as well as the YOURLAWYER.COM trademark registered with the U.S. Patent & Trademark office under the Registration Number 3210791, with a registration date of February 20, 2007.

10. PW invested substantial time and expense in the creation of its extensive web presence. PW currently has active hundreds of websites including their flagship website YOURLAWYER.COM, which itself has over 50,000 pages of information for potential clients about a variety of tort liability issues, including extensive content devoted to many different defective drugs and medical devices, toxic substances, product liability and disease issues. As of September 18, 2012, PW directly employed, full and part-time, approximately 10 individuals and additional individuals through contractors. The page contents, systems and methods were developed and updated after many hours of legal and technical research and writing, at great expense to PW.

11. On or about March 4, 2000, PW launched the PW Website with the Internet domain name YOURLAWYER.COM to market its services over the Internet. Prior thereto, PW has had an Internet presence via other websites since approximately 1994-1995.

12. PW also owns protectable trade dress comprising the distinctive "look and feel" of the PW Website (the "PW Trade Dress"). The PW Trade Dress serves to identify PW as the source of its services. PW has invested substantial time, effort and financial resources in creating and promoting its trade dress in connection with the sale of its services in interstate commerce. The PW Trade Dress is widely recognized and has become an asset of substantial value as a symbol of PW, its quality service and its good will.

13. The PW Trade Dress is inherently distinctive as applied to its services and/or has acquired secondary meaning through PW's long-term, widespread and continuous use of the trade dress in commerce. Plaintiff's websites and web strategies are well known in the industry and known as the "gold" standard for personal injury law firms. On information and belief, Defendant Gilman was well aware of the PW Website and was desirous to copy it, and hired Laraia in furtherance of that goal.

14. The PW Trade Dress is unique, recognizable and not merely functional. The distinct and non-functional features of the trade dress include, but are not limited to, the following elements – each of which are copied on Defendant Gilman's website (the "Infringing Website"):

    A. A blue header bar listing topics in white type relating to personal injury and mass torts, separated by white vertical bars, including "Defective Drugs," "Medical Devices," "Product Liability" and others.

    B. Directly above (A) on the left is the firm name, logo and the descriptive

"A National Law Firm."

C. Directly below (A) is an element of scrolling images and news headlines, along with back, pause and forward buttons.

D. Directly below (C) is a shaded box containing links to current drugs, products and legal issues, with just headers and no additional description.

E. A blue footer bar of approximately ten text lines repeating the element (B).

F. A brightly-colored side banner form allowing visitors to input: (i) their personal information; (ii) the date of their incident; (iii) the name of drug, device or accident description; and (iv) a description of their case, with a larger white text heading that states: "FREE CASE REVIEW

NO COST • NO OBLIGATION"

G. A blue, floating side banner, addressed to visitors with a question, which states in white type "FREE CASE REVIEW" and clicks through to a page with a case submission form.

H. Topic pages that click through from (A) and list sub-topic pages on numerous liability issues, including but not limited to:

   i. "Defective Drug Side Effects Lawsuits Lawyer," which links to sub-topic pages including: 5-Alpha Reductase Inhibitor, Actonel, Actos, Aredia, Avastin, Avodart, Bisphosphonates, Bonefos, Boniva, Chantix, Didronel, Fosamax, Finastride, Jalyn, Levaquin, Lexapro, Nexium, Paxil, Plavix, Pradaxa, Prevacid, Prilosec, Propecia, Proscar, Proton Pump Inhibitors, Prozac, Reclast, Skelid,

    SSRI Antidepressants, Wellbutrin, Yaz/Yasmin/Ocella Side Effects, Zocor, Zoloft, Zometa, Zyban Birth Defects.

  ii. "Defective Medical Device Lawsuits Lawyer," which links to sub-topic pages including: AMS Transvaginal Mesh, Boston Scientific Transvaginal Mesh Injury, CooperVision Avaira Topic Contact Lens Recall, C.R. Bard Transvaginal Mesh Injury, Depuy Hip Implant, DePuy High-Flex Knee Replacement, DePuy Pinnacle Hip Implant, Johnson & Johnson/Ethicon Gunecare Transvaginal Mesh Injury, Medtronic Infuse, Oxinium Knee Implants, Transvaginal Mesh, Wright Medical Profemur Total Hip Replacement, Zimmer NexGen CR-Flex Knee Replacement, Zimmer NexGen LPS-FLEX Knee Implant, Zimmer NexGen MIS Tibial Component.

15. From July 2, 2007 to September 18, 2012, Laraia, an employee of PW, engaged in programming and design of webpages published on the PW Website as works for hire. Laraia had access to and knowledge of valuable and confidential business information of PW, including information about PW marketing strategies and PW Website access and use by the public. Laraia's employment agreement with PW ("Laraia Agreement") includes that he would not receive consideration from third parties for such information and that he would not disclose any such information to third parties without the written consent of PW.

Gilman's Website and Defendants' Wrongful Conduct

16. On information and belief, Gilman contacted Laraia and induced him to breach the Laraia Agreement and disclose PW's business information, including but not limited to

confidential business information such as information about PW Website access and use by the public, and PW marketing data (the "PW Confidential Information"). This information is of enormous value, as it provides insights into client needs and opportunities that are not available to the public and cannot be otherwise replicated or obtained.

17. On information and belief, Gilman further procured Laraia's participation in Gilman's wholesale copying of PW Website content, methods, strategies and PW Trade Dress.

18. On information and belief, Gilman launched the Infringing Website in or after 2008, years after the launch of the PW Website, and Gilman conformed its site to the PW Website after engaging Laraia. Gilman's Infringing Website is substantially similar to the PW Website in content and look and feel.

19. On information and belief, Defendants knowingly induced, participated in, aided in, and profited from the illegal copying of the PW Website and the improper use of PW business information, as alleged above.

### FIRST CLAIM FOR RELIEF
### TRADE DRESS INFRINGEMENT
### (15 U.S.C. § 1125(a))

20. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 19 as if fully set forth herein.

21. PW uses the PW Trade Dress throughout the United States in connection with the provision of its legal services. The PW Trade Dress is distinctive and distinguishes PW and its services from those of its competitors. The PW Trade Dress is strong in light of PW's significant marketing and the acclaim and widespread public recognition of PW's services.

22. Defendants have, without authorization, duplicated the PW Trade Dress on the Infringing Website. The similarities between the features on the Infringing Website and the PW

Trade Dress, which is associated with PW's quality, reputation and goodwill, is likely to cause consumer confusion or to cause mistake or to deceive as to the Infringing Website's affiliation, connection, or association with and/or endorsement or approval by the same source as the PW Website, and constitute infringement of Plaintiffs rights under 15 U.S.C. § 1125(a) and/or vicarious or contributory infringement of Plaintiffs rights under 15 U.S.C. § 1125(a).

23. On information and belief, actual and potential consumers of PW have relied upon the likely confusion, mistake and/or deception, and such reliance has caused economic loss to PW's business.

24. On information and belief, Defendants exercised ownership or control over the Infringing Website and/or intentionally induced or encouraged the infringement of PW's rights under 15 U.S.C. §1125(a).

25. At all times relevant to this action, Defendants knew of PW's prior adoption and widespread use of the PW Website content and PW Trade Dress, and the acts of Defendants as described herein have been, and continue to be, willful and deliberate and in conscious disregard of PW's rights.

26. Due to the acts of Defendants as described herein, PW has been damaged and will continue to be damaged, and Defendants have been unjustly enriched, in an amount to be proven at trial.

27. PW has no control over the quality of the content on the Infringing Website or Defendants' services, and the Infringing Website puts PW's goodwill at risk. PW's goodwill is of enormous value, and PW will suffer irreparable harm if the infringement is allowed to continue to the detriment of PW's goodwill. PW is further entitled to an order enjoining Defendants from any further infringement of the PW Trade Dress.

## SECOND CLAIM FOR RELIEF
## BREACH OF CONTRACT
(New York Common Law)

28. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 27 as if fully set forth herein.

29. Laraia's employment agreement with PW provided that he cannot use PW's confidential business information and trade secrets for his own benefit "nor disclose this information to any other person, firm, corporation, association or other entity for any reason or purpose whatsoever, or at any time thereafter, except as consented to, in advance and in writing, by [PW] . . . In addition, during the period that you are an employee and at any time following termination of employment, you shall not, directly and/or indirectly in any way whatsoever, use or disclose to any persons or entities . . . any proprietary or confidential information relating to our employees, business or affairs" ("Laraia Non-Disclosure Agreement" or "Laraia NDA").

30. Laraia had access to volumes of confidential business information of PW, including those concerning the design, management, deployment, systems, methods, use and access of PW's extensive website, compilations of data showing client and potential client access and visitor flow, statistics concerning access of pages related to specific liability issues, drugs, medical devices and products, and more.

31. On information and belief, in breach of his agreement with PW, Laraia disclosed confidential and trade secret information to Gilman, and further assisted in the design of their unauthorized and infringing website, which seeks to divert business opportunity from PW to Gilman.

32. As a proximate result of Laraia's breach, PW has been damaged and has suffered loss of business in the marketplace, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE WITH CONTRACT
### (New York Common Law)

33. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 32 as if fully set forth herein.

34. A valid agreement governing various aspects of employment was entered into between PW and Robert Laraia on June 26, 2007 and February 21, 2012, which obligates Laraia not to disclose PW's confidential business information to third parties without the prior written consent of PW.

35. On information and belief, at all times relevant to this action, Gilman had actual and constructive knowledge that Laraia had been employed by PW (which was the reason Gilman sought to hire Laraia) and that Laraia was bound by contract not to disclose PW's confidential business information.

36. On information and belief, Gilman intentionally procured a breach of the Laraia NDA, and thereby obtained PW's valuable confidential business information.

37. PW has been damaged as a proximate result of these actions and the disclosure of its confidential business information, in an amount to be proven at trial, and PW is entitled to an order enjoining Gilman from any further interference with PW's contractual relations or use of PW's confidential business information.

### FOURTH CLAIM FOR RELIEF
### MISAPPROPRIATION OF TRADE SECRETS
### (New York Common Law)

38. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 37 as if fully set forth herein.

39. The PW Confidential Information, including the compilations of data concerning

PW marketing and PW's website access and use by the public, is used by PW in its business, and gives PW an opportunity to obtain an advantage over competitors who do not have access to the data.

40. The PW Confidential Information is not known outside of PW, and it is only known to limited employees within PW. It has taken PW over a decade and PW has expended extensive resources in creating the PW Website and systems in which the PW Confidential Information is gathered and used.

41. PW takes broad measures to ensure the secrecy of the information, and such information would have significant value to PW's competitors, especially as it cannot be otherwise replicated or acquired.

42. On information and belief, Gilman obtained the PW Confidential Information by improper means and in breach of the Laraia Non-Disclosure Agreement.

43. As a proximate cause of these acts, which constitute unlawful misappropriation of a trade secret under New York law, PW has been damaged in an amount to be proven at trial, and PW is entitled to an order enjoining Gilman from further violations.

44. On information and belief, each of Defendants conspired with each other to commit the wrongful acts described above and that conspiracy was a proximate and actual cause of injury to Plaintiff

### FIFTH CLAIM FOR RELIEF
### UNFAIR COMPETITION
### (New York Common Law)

45. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 44 as if fully set forth herein.

46. On information and belief, PW's property rights, including its valuable PW

Website content and confidential marketing and website use data, were misappropriated by Defendants for commercial advantage, and Defendants thereby unjustifiably profited from PW's significant expenditure of time, labor and talent.

47. The acts described above proximately caused injury to PW, constitute unfair competition by Defendants in violation of New York common law, and entitle PW to damages and an order enjoining Defendants from further violations.

## SIXTH CLAIM FOR RELIEF
## CONSUMER FRAUD
### (N.Y. GBL, Article 22A § 349)

48. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 47 as if fully set forth herein.

49. On information and belief, Gilman's acts described above constitute deceptive acts or practices in the conduct of Gilman's business that are likely to mislead a reasonable consumer acting reasonably under the circumstances into confusing Gilman's services with those of PW.

50. PW has been injured as a proximate result of Gilman's material deceptive and misleading acts and practices, and PW is entitled to its actual damages therefrom and an order enjoining Gilman from further violations.

## SEVENTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT
### (New York Common Law)

51. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 50 as if fully set forth herein.

52. On information and belief, Defendants have received multiple benefits they would not otherwise have received but for their unjust taking of the subject matter published at PW

Website, without compensation, and their passing off of derivative subject matter published at the Infringing Website as their own.

53. Defendants have been unjustly enriched and continue to retain those benefits belonging to Plaintiff by continuing to operate the Infringing Website at the expense of Plaintiff. Plaintiff is entitled to disgorgement of Defendants' profits attributable to Defendants' improper taking in an amount subject to proof at trial.

### EIGHTH CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTY
(New York Common Law)

54. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 53 as if fully set forth herein.

55. Laraia's responsibilities, including those under his title of Director of Lead Generation/Internet Media of PW, gave him discretion to act for PW and placed him in a position of trust and confidence with respect to PW, and Laraia owed fiduciary duties to PW, including duties of loyalty and care and the duty to act primarily for the benefit of PW in matters related to the employment. On information and belief, Laraia breached those fiduciary duties by working with Gilman to copy content on the PW Website and to pass confidential business information to Gilman, thereby assisting their improper attempts to divert business opportunities from PW.

56. As a proximate result of Laraia's breach of fiduciary duty, PW has suffered damages, including injury due to loss of business and valuable proprietary data created by PW at a significant expense.

### NINTH CLAIM FOR RELIEF
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
(New York Common Law)

57. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 56 as if

fully set forth herein.

58. As detailed above, Laraia owed fiduciary duties to PW. On information and belief, Gilman aided and abetted Laraia's breach of those duties by inducing such breach by knowingly and willingly working and providing substantial assistance to the breach by assisting Laraia to copy the PW Website and misappropriate PW's confidential information to divert corporate opportunity and benefit Defendants.

59. On information and belief, at all relevant times, Gilman had actual knowledge of Laraia's position with PW and his fiduciary duties, and Gilman was fully aware that Laraia was breaching his fiduciary duties to PW.

60. As a proximate result of Gilman's aiding and abetting Laraia's breach of fiduciary duty, PW has suffered significant damages in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF
## DIVERSION OF CORPORATE OPPORTUNITY
(New York Common Law)

61. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 60 as if fully set forth herein.

62. By virtue of the special relationship of trust and confidence described above, Laraia had a duty to refrain from diverting the business opportunities of PW away from PW. Laraia breached this obligation by the actions of diversion described above.

63. Such diversion was the proximate cause of injury to PW and a source of significant profit to Defendants.

64. On information and belief, each of Defendants conspired with each other to commit the various breaches and wrongful acts described above and that conspiracy was a proximate and actual cause of injury to Plaintiff.

## ELEVENTH CLAIM FOR RELIEF
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (New York Common Law)

65. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 64 as if fully set forth herein.

66. On information and belief, Defendants have knowingly and willingly diverted clients from entering into business relationships with PW. This interference was done maliciously and by wrongful means, including the breach of legal duties between Laraia and PW, the misappropriation of confidential data from PW, the unauthorized and unfair copying of PW's content and work product, and the deceptive and infringing use of the PW Website content and the PW Trade Dress.

67. Were it not for Defendants' wrongful acts, PW would have entered into business relations with the diverted clients, and those wrongful acts were the proximate cause of damages to PW in an amount to be determined at trial.

## TWELFTH CLAIM FOR RELIEF
## FAITHLESS SERVICE DOCTRINE
### (New York Common Law)

68. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 67 as if fully set forth herein.

69. Laraia owed a duty of fidelity and loyalty to his employer PW.

70. On information and belief, Laraia was faithless and disloyal in the performance of his duties, working with Gilman to copy the PW Website content, misappropriate PW confidential data and divert PW corporate opportunity, for Defendants' benefit.

71. Laraia is disentitled to recover his employment compensation, and he must disgorge all compensation received from the date of his first disloyal act. PW is thus entitled to

disgorgement of Laraia's wrongful employment profits, damages in an amount to be determined at trial, and an order discharging PW from any obligation to pay further employment compensation to Laraia.

### THIRTEENTH CLAIM FOR RELIEF
### CIVIL CONSPIRACY
### (New York Common Law)

72. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 71 as if fully set forth herein.

73. Defendants entered into a corrupt agreement to further the tortious conduct alleged herein, and each Defendant intentionally participated in furtherance of the plan or purpose.

74. Defendants committed overt acts in furtherance of the agreement, as alleged herein, and Plaintiff was damaged as a result.

### PRAYER FOR RELIEF

75. WHEREFORE, Plaintiff prays that this Court:

    A) Find Defendants liable for each of the claims alleged herein;

    B) Award damages adequate to compensate Plaintiff for its injuries and to disgorge any profits or unjust enrichment obtained by Defendants;

    C) Find that the Defendants' conduct has been willful and deliberate, and thereby award Plaintiff increased damages, costs, expenses, and attorneys' fees, as allowed under the statutes cited above.

    D) Permanently enjoin Defendants and their officers, agents, servants, employees and affiliates, as well as all others in active concert or participation with it as to any of the foregoing, from:

   i. infringing, contributing to the infringement of, or inducing the infringement of the PW Trade Dress;

   ii. interfering with the non-disclosure agreements of any current or former PW employees;

   iii. misappropriating or using any of PW's confidential business information;

   iv. engaging in further acts of misappropriation or unfair competition as to PW;

   v. engaging in further deceptive acts or practices with respect to its Internet content and the PW Website;

E) Award Plaintiff such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated: New York, New York
   September 25, 2012

            PRYOR CASHMAN LLP

            By: _____
              Brad D. Rose
              Benjamin K. Semel
            Attorneys for Plaintiff
            7 Times Square
            New York, NY 10036
            212-421-4100